IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No.  06-10004-01-WEB |
| | ) | |
| BALTAZAR MENDEZ, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**Memorandum and Order**

This matter is before the court on the defendant's motions for judgment of acquittal and for new

trial.  The court finds oral argument would not assist in deciding the issues presented.

I. *Background.*

Defendant Baltazar Mendez was charged in a 14-count Indictment filed January 11, 2006.  After

he completed a financial affidavit indicating he was unable to afford counsel, an attorney was appointed to

represent him.  On January 19, 2006, the court entered a scheduling order for discovery, set a date for a

motions hearing, and set the trial for March 21, 2006.  On February 7, 2006, a 12-count Superseding

Indictment against the defendant was filed.  The Superseding Indictment included the following charges:

Count 1 - possession with intent to distribute more than 5 grams of methamphetamine (21 U.S.C. § 841;

18 U.S.C. § 2)); Count 2 - possession of one or more firearms in furtherance of a drug trafficking crime

(18 U.S.C. § 924(c)); Counts 3, 4, 5 and 6 - unlawful user of a controlled substance in possession of a

firearm or ammunition (18 U.S.C. § 922(g)(3)); Count 7 - improper entry into the United States by an alien,

or eluding inspection by immigration authorities (8 U.S.C. § 1325(a)(1) and (2)); Counts 8, 9 and 10 - alien in unlawful possession of a firearm (18 U.S.C. § 922(g)(5)); Count 11 - knowing possession of a prohibited firearm not registered in the National Firearms Registration and Transfer Record (26 U.S.C. § 5861(d)); and Count 12 - maintaining a drug-involved premises (21 U.S.C. § 856(a)(2) and 18 U.S.C. § 2)).

On February 27, 2006, defendant retained an attorney, Mr. Bryan Hitchcock, who was substituted for defendant's appointed counsel. The court thereafter twice extended the motion deadline at defendant's request. As a result of these motions, the trial was re-scheduled for May 9, 2006.

On May 8, 2006, the day before trial, defendant filed another motion for continuance. The motion alleged, among other things, that defendant's wife, Anjelica Luna, was a necessary defense witness and that she had just given birth within the last week. The motion also alleged that another potential defense witness, John Millington, had been arrested on April 27, 2006, but that Mr. Mendez's counsel had been unable to contact Millington's counsel to arrange for an interview. The motion further stated that "through further review of discovery and case law, [defense counsel] has discovered additional issues which properly should be litigated prior to trial." Doc. 17 at 2. The Government opposed the request. *Id*. After reviewing the motion, the court entered a minute order denying it on the afternoon of May 8th.

The case proceeded to jury trial on May 9, 2006. Mr. Hitchcock's partner, Mr. Carl Maughan, entered his appearance the morning of trial and assisted in Mr. Mendez's defense. Highly summarized, the Government's evidence was as follows. On December 9, 2005, Kansas Bureau of Investigation agents obtained and executed a search warrant on a residence at 2688 Vassar Street in Wichita, Kansas. They found the defendant Baltazar Mendez just outside the house. Mendez was in possession of a glass smoking

pipe and a round of ammunition.  Inside, in a dresser in a bedroom of the house, officers found numerous

items commonly used in the sale of drugs, including plastic baggies, electronic scales, and "MSM" (often

used as a cutting agent for methamphetamine).   Under the same dresser, officers found a nylon bag

containing a .380 handgun with a loaded magazine containing 11 rounds.  In the pocket of a shirt located

in the bedroom closet, officers found a baggie with a mixture containing over 10 grams of

methamphetamine.  The street value of the methamphetamine was about $1,000, but it could be extended

up to $2,000 if it were further "cut."  Officers found documents belonging to the defendant in the bedroom,

and they also found documents bearing the defendant's name the living room, including a driver's license

and an energy bill in the defendant's name.  Under the mattress of the bed in that room (the only bed in the

house), officers found a shotgun and a notebook.  The Government presented evidence that the notebook

was a ledger for keeping track of drug transactions.  The name "Mendez" appeared in large letters on it,

and testing showed the defendant's fingerprint was on the notebook, together with the fingerprint of John

Millington and an unidentified individual.   Another shotgun was found sitting on the floor of another

bedroom in the house with shotgun shells nearby.  Ammunition for various firearms was also present in the

house.  The Government presented evidence that the landlord of the Vassar residence had initially rented

the house to the defendant's girlfriend, Anjelica Luna, and that the defendant had subsequently contacted

him and requested that he be added to the lease.  The landlord said he usually received the rent money from

the defendant, and that he never received rent money from somebody named John Millington.

The Government presented evidence that the defendant waived his *Miranda* rights and agreed to

talk to an officer after his arrest.  According to this evidence, the defendant stated that he lived at the

Vassar residence with two other individuals.  He said he had access to all parts of the house, that his two

roommates paid him rent to stay at the residence, and that he planned to fix up the rooms in the house. He said the .380 handgun under the dresser was his and that he kept the gun for protection because he had previously been robbed. He admitted regularly purchasing and using methamphetamine, but denied selling it. Defendant said he typically stashed his methamphetamine in the pocket of his shirt. He said he sometimes slept in the one (and only) bed in the house and sometimes on the couch. He said the electronic scales found in the house were his and that he used them to make sure he wasn't getting ripped off when he bought methamphetamine. He said he was aware of and knew the location of both of the shotguns in the house, although he denied ownership of them. Defendant said he sometimes used cocaine, and that he was aware of recent cocaine usage by his two roommates. Defendant said he had been born in Mexico. He provided the agents with what he claimed was his social security number, but the number subsequently proved to be invalid. The number he gave the agents was the same as the social security number on the Vassar residence rental agreement. The Government presented evidence that a check of the U.S. Immigration and Customs Enforcement Central Index System -- a nationwide database containing a record of documents used for entry into the United States such as permanent residence cards, border crossing cards, and certificates of naturalization -- showed no record to indicate that defendant Baltazar Mendez had entered the country legally. Likewise, a search of visa records database going back to 1999 showed no record of the defendant having a valid visa.

After the close of the evidence, the court dismissed Count 11 of the Superseding Indictment.[1] On

_____

[1] Count 11 charged that defendant knowingly possessed a firearm that was not registered to him in the National Firearms Registration and Transfer Record, namely "a Remington Model 1148, 12 gauge shotgun, with a barrel length of less than 18 inches." Section 5845(a) of Title 26 provides that the firearms subject to this requirement include a shotgun having a barrel less than 18 inches in length (§5845(a)(1)) and

May 11, 2006, the jury returned a verdict finding the defendant not guilty as to Counts 1 and 2 but guilty

as to Counts 3-10 and 12.  On May 22, 2006, defendant filed a motion for judgment of acquittal and a

motion for new trial.

    II. *Motion for Judgment of Acquittal.*

    Defendant's motion for judgment of acquittal argues generally that the evidence was insufficient to

support the jury's finding of guilt.  Defendant claims the Government's evidence does not permit a

conviction "without a crude stacking of inferences which courts have always rejected."  Doc. 27 at 3.  He

argues the Government "asked the jury to infer that one resident of a house necessarily possesses all the

items belonging to any roommates which also may be dwelling in the house at the same time." *Id*. at 6.

Defendant concedes the evidence was sufficient to support his conviction on Count 3 -- for possession of

the .380 handgun by a drug user -- but he argues there was insufficient evidence that he possessed either

of the other firearms charged in Counts 4, 5, 9 or 10.  He further argues the Government "offered no

evidence that [he] was an illegal alien other than his admission that he was born in Mexico," and contends

such evidence is insufficient to support a conviction on Counts 7, 8, 9 or 10, which required proof that he

was an alien or an alien unlawfully in the United States.  Lastly, defendant argues Count 7 should be

dismissed because no evidence was presented to show that he illegally entered the United States or eluded

_____

a weapon made from a shotgun having such a barrel (§5845(a)(2)).  At trial, the Government's firearms
expert testified that the Remington would not be considered a shotgun under this provision because it had
no stock and was not capable of being fired from the shoulder. *See* 26 U.S.C. § 5845(d).  Rather, the
agent said, the firearm would be considered a weapon made from a shotgun.  In light of this testimony, the
court concluded the Government's evidence failed to show that the defendant committed the specific
offense charged in Count 11.

inspection within the five-year limitations period pertaining to such acts.[2]

A. *Standard Governing Rule 29 Motion.*

Under Rule 29, the court "on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." Fed.R.Crim.P. 29(a). In reviewing the sufficiency of the evidence, the court must look at the evidence in the light most favorable to the Government and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 319 (1979).

B. *Discussion.*

Defendant first challenges whether the Government showed that he was in possession of the firearms charged in Counts 4, 5, 9 and 10.[3] The element of possession may be satisfied either by a showing of actual or constructive possession. *United States v. Norman*, 388 F.3d 1337, 1340 (10th Cir. 2004). Constructive possession of an item occurs when a person "knowingly holds ownership, dominion or control over the object and premises where it is found." *Id. (quoting United States v. Lazcano-Villalobos*, 175 F.3d 838, 843 (10th Cir. 1999)). If the defendant has exclusive possession of the premises at issue,

---

[2] Defendant also mistakenly argues that the jury improperly convicted him of unlawful possession of firearms in furtherance of a drug trafficking crime. *See* Doc. 27 at 6-7. In actuality, the jury acquitted defendant on the only such count in the Superseding Indictment (i.e., Count 2).

[3] Count 6 charged the defendant with being an unlawful user of a controlled substance in possession of a live .44 caliber cartridge, in violation of 18 U.S.C. § 922(g)(3). The defendant does not appear to challenge the sufficiency of the evidence as to Count 6, and the court notes that the Government presented evidence that defendant was in actual possession of such a cartridge at the time of his arrest. Additionally, the defendant concedes that the evidence was sufficient to support the verdict on Count 3, which charged a violation of § 922(g)(3) based on defendant's possession of the Browning .380 caliber handgun. Doc. 27 at p. 7. By corollary, the evidence of possession of the .380 handgun was likewise sufficient as to Count 8.

knowledge, dominion, and control are properly inferred. *Norman*, 388 F.3d at 1340 (citation omitted).

But "in cases of joint occupancy, where the government seeks to prove constructive possession by

circumstantial evidence, it must present evidence to show some connection or nexus between the defendant

and the firearm or other contraband." *Id*. at 1341 (*quoting United States v. Mills*, 29 F.3d 545, 549

(10th Cir. 1994). The government must show "evidence supporting at least a plausible inference that the

defendant had knowledge of and access to the weapon or contraband." *Norman*, 388 F.3d at 1341

(*citing United States v. Van Tieu*, 279 F.3d 917, 921 (10th Cir.2002)). Thus, in the joint occupancy

context, knowledge and access are required to prove that the defendant knowingly held the power to

exercise dominion and control over the firearm. *Norman*, 388 F.3d at 1341 (citations omitted).

Under the above standards pertaining to joint occupancy, the court concludes the Government

presented sufficient evidence from which a jury could properly find the element of possession as applied

to the two shotguns. Among other things, there was evidence that the defendant was the primary tenant

for this residence, with his name appearing both on the lease and the utility account, and that he exercised

dominion and control over the residence generally. There was evidence that the defendant had knowledge

of the methamphetamine and related items in the southeast bedroom, as well as the loaded .380 handgun

hidden below the dresser. There was evidence the defendant admitted having knowledge that the

Springfield Arms shotgun (charged in Counts 4 and 9) was located under the mattress in the bed, and there

was evidence that this gun was found together with a "drug ledger" which had the defendant's fingerprint

on it. The Government offered evidence that the defendant admitted to using this bed (although he said

others used it periodically as well), and it also offered evidence tending to show the defendant's occupancy

of the room where this shotgun was found. This and the other evidence was clearly sufficient to permit a

7

reasonable jury to find the defendant's knowledge of and access to this firearm beyond a reasonable doubt, and it would permit the jury to conclude that the defendant constructively possessed the weapon. *Cf. Van Tieu*, 279 F.3d at 922. As for the Remington 12-gauge shotgun (Counts 5 and 10), the location of that weapon -- i.e., sitting out on the floor of the other bedroom -- could reasonably imply that anyone using the room had knowledge of and access to the weapon, and that the weapon was in that location for the purpose of allowing ready access to it. The Government presented evidence that the defendant admitted in his statement that he knew of the presence of this shotgun. And as noted above, there was some evidence that the defendant exercised dominion and control over the residence generally. Moreover, there was circumstantial evidence of defendant's knowledge of the drug activities at the house generally and the presence of other firearms and ammunition. A jury could find that the defendant jointly participated with the other occupants of the house in using drugs on the premises (defendant allegedly told officers he also used cocaine and was aware of cocaine use by the other occupants) and in possessing guns for protection against would-be robbers. There was evidence that officers found various ammunition, including two 12-gauge shotgun shells, on an entertainment cabinet between the living room and the kitchen. There are other circumstances as well pointing to the defendant's possession of these weapons, but the foregoing is sufficient for illustration. This is not an impermissible "stacking" of inferences; it is a series of related facts all pointing towards the defendant's knowledge of and access to these firearms, as well as his ability and intention to control them. When the evidence is viewed as a whole and in the light most favorable to the Government, a reasonable jury could infer that the defendant had constructive possession of the Remington shotgun as well as the Springfield Arms shotgun. In sum, the evidence was sufficient to allow a jury to find that the element of possession was established beyond a reasonable doubt as to Counts 3-6 and 8-10 of

the Superseding Indictment.

Defendant next challenges the sufficiency of the evidence pertaining to the jury's finding that he was

an alien unlawfully in the United States. Doc. 27 at 8. Such a finding was an essential element of Counts

8, 9 and 10, which charged the defendant with violations of 18 U.S.C. § 922(g)(5). An "alien" is defined

as any person who is not a citizen or national of the United States. *See* 8 U.S.C. § 1101(a)(1). The

Government may show that an alien was "unlawfully in the United States" by showing that he was in this

country without authorization at the time he possessed the firearms.[4] *See United States v. Atandi*, 376

F.3d 1186, 1189 (10th Cir. 2004). Regulations promulgated by the ATF further explain that "unlawfully

in the United States" refers to aliens who "are not in valid immigrant, nonimmigrant or parole status." 27

C.F.R. § 478.11. Defendant contends the only evidence of his alien status was his admission to officers

that he was born in Mexico. In so arguing, however, defendant improperly discounts the evidence that he

knowingly provided a false social security number to officers after his arrest. Such evidence, when

considered with defendant's admission that he was born in Mexico, could reasonably be viewed by the jury

as a deliberate falsehood strongly indicative of defendant's unlawful presence in the United States. And

given the Government's further evidence showing an absence of any valid authorization for the defendant

to enter the country legally, the U.S., the jury could find beyond a reasonable doubt that the defendant was

an alien unlawfully in the United States at the time of these offenses.

Lastly, defendant argues Count 7 must be dismissed because the evidence of his citizenship was

---

[4] The court's instructions to the jury in this case did not attempt to further define the requirement
that the defendant be "unlawfully in the United States." Neither side requested such an instruction or
objected to the court's instructions, and the court concluded that such an instruction was not necessary
under the evidence presented.

"vague and speculative" and because the Government failed to show that the essential elements of the crime

occurred within the five-year statute of limitations.  Doc. 27 at 10.  The court notes that the Government

has failed to address the statute of limitations issue in its response.  Although the court rejects defendant's

argument about his citizenship status for the same reasons discussed above, it agrees with defendant that

the Government failed to produce evidence showing beyond a reasonable doubt that the offense charged

in Count 7 occurred within the applicable limitations period.  *Cf. United States v. Rincon-Jiminez*, 595

F.2d 1192, 1994 (9th Cir. 1979) (finding prosecution under § 1325 barred where it was brought nine years

after illegal entry).

Section 3282(a) of Title 18 provides in part that, except as otherwise expressly provided by law,

no person shall be punished for any non-capital offense unless the indictment is instituted within five years

after the offense was committed.  There are certain provisions adopting different limitation periods for

particular offenses, but none of them appear to apply here.  Likewise, the Government has not suggested

any basis for tolling the limitations period.  *Cf.* 18 U.S.C. § 3290 (statute of limitations tolled when person

is a fugitive).  *See also United States v. Rivera-Ventura*, 72 F.3d 277, 285 (2nd Cir. 1995) (finding alien

who was subject to criminal prosecution and who gave INS and other authorities false names and

addresses was a fugitive).  Count 7 of the Superseding Indictment alleged in substance that "on or about

December 9, 2005," the defendant, an alien, "was found in the United States in Sedgwick County, Kansas,

after having eluded inspection and having entered the United States at a place other than as designated by

ICE officers."  Although the charge thus refers to the date upon which the defendant was *found* in the

United States, such a fact is not material to an offense under § 1325(a) and does not affect the time at

which the offense occurs.  Section 1325(a) provides in part that "any alien who (1) enters ... the United

States at any time or place other than as designated by immigration officers, or (2) eludes examination or inspection by immigration officers" shall be guilty of an offense.  Under this unambiguous language, an offense occurs as of the date the alien improperly enters the United States or eludes inspection, not the date upon which the alien is subsequently "found" in the United States.  (This language is in sharp contrast to § 1326(a), dealing with re-entry of previously removed aliens, which specifically provides that an offense occurs when the alien "enters, attempts to enter, *or is at any time found in*, the United States....").  *See Rincon-Jiminez*, 595 F.2d at 1994 (citing the difference in these provisions as evidence that § 1325 is not a continuing offense).  *See also I.N.S. v. Lopez-Mendoza*, 468 U.S. 1032, 1056-57 (1984) (White, J., dissenting) (noting the Supreme Court has suggested in dictum that § 1325(a) is not a continuing offense).

Statutes of limitation normally begin to run when the crime is complete.  *Toussie v. United States*, 397 U.S. 112, (1970).  In this case, the Government offered no specific evidence at trial to establish when the defendant either entered the United States or eluded inspection.  Nor can the court recall any circumstantial evidence that could have allowed the jury to conclude beyond a reasonable doubt that either of such acts occurred within the five years preceding the filing of an indictment in this case.  And, as noted above, the Government has not identified any such evidence in its response.  Under the circumstances, the court concludes that defendant's motion for judgment of acquittal must be granted as to Count 7 based upon the failure to show that the acts constituting the offense occurred within the limitations period of 18 U.S.C. § 3282(a).

III.  *Motion for New Trial*.

In the alternative to his motion for acquittal, defendant argues he should be granted a new trial. Rule 33(a) of the Federal Rules of Criminal Procedure provides in part that the court may grant a new trial

"if the interest of justice so requires."  Courts view motions for new trial with disfavor and grant such

motions with great caution. *United States v. Pearson*, 203 F.3d 1243, 1274 (10th Cir. 2000).

Defendant first seeks a new trial due to the court's denial of his request for continuance the day

before trial.  Defendant does not explain why the denial of this last-minute continuance warrants a new trial,

nor does he attempt to demonstrate any prejudice from the court's ruling.  The denial of a motion to

continue constitutes error only if it was arbitrary or unreasonable and materially prejudiced the defendant.

*United States v. Wayne*, 993 F.2d 760, 767 (10th Cir. 1993).  Relevant factors include:  the diligence

of the party requesting the continuance; the likelihood that the continuance, if granted, would accomplish

the purpose underlying the party's expressed need for the continuance; the inconvenience to the opposing

party, its witnesses, and the court resulting from the continuance; and the need asserted for the continuance

and the harm that appellant might suffer as a result of the district court's denial of the continuance. *Id*.

Defendant has not shown it was improper to deny the continuance under these factors.  Defendant made

no showing of diligence in connection with the matters upon which his motion was based, nor did he

demonstrate that a continuance was essential for a fair trial.[5]  A continuance on the eve of trial would have

been highly disruptive and the defendant failed to articulate (either then or now) any harm from the court's

ruling.  Under the circumstances, the denial of a continuance does not warrant a new trial.

Defendant next claims there was evidence at trial indicating that his constitutional rights were

violated in connection with a search of his residence and an ensuing interrogation by police.  The incident

to which defendant refers was a "first" search of the Vassar residence preceded a second such search and

---

[5] The court notes that one of the potential witnesses mentioned in defendant's motion to continue, the defendant's wife, was in fact in attendance at the trial.

an interrogation of the defendant later the same day.  Evidence at trial indicated that this first search, like

the second one, was conducted pursuant to a warrant.  The Government introduced evidence pertaining

to this first search after the defense attempted to suggest that the police initially had reason to suspect

defendant's roommate, but not the defendant, of a drug-related kidnaping and robbery.  Contrary to

defendant's suggestion, there was no evidence at trial showing that his constitutional rights were violated

in connection with either of the searches or the interrogation.  Even if the evidence concerning this first

search was somewhat abbreviated, a motion to suppress evidence must be raised prior to trial, and the

failure to assert such a motion constitutes a waiver absent good cause.  *See* Fed.R.Crim.P. 12(e) (absent

good cause, a party waives a suppression issue by not raising it prior to the motion deadline);  *United*

*States v. Meraz-Peru*, 24 F.3d 1197, 1198 (10th Cir. 1994).  Defendant has not shown good cause for

failing to assert these issues in a timely motion to suppress before trial.  Defendant's argument does not

merit a new trial.

Defendant's next argument is that a new trial is warranted because the prosecution improperly

withheld exculpatory evidence.  "Specifically, defendant refers to the hand written field notes of the lead

KBI agent."  Doc. 29 at 2.  Even assuming for the moment that the Government had an obligation under

*Brady v. Maryland*, 373 U.S. 83 (1963) to disclose these notes, and that it failed to do so prior to trial,

such a failure would not warrant a new trial in this instance.  The defense was informed about these notes

during the trial and was able to fully cross-examine the agent about the matter.  Moreover, defendant has

not shown the presence of any exculpatory information in the notes which could have affected the jury's

verdict.  Defendant clearly suffered no prejudice from the alleged non-disclosure.  *Cf United States v.*

*Scarborough*, 128 F.3d 1373, 1376 (10th Cir. 1997) ("As long as ultimate disclosure is made before it

13

is too late for the defendant[ ] to make use of any benefits of the evidence, Due Process is satisfied.").

Defendant next claims his rights against double jeopardy were violated by being convicted both of being an unlawful user of drugs in possession of firearms (§ 922(g)(3)) and being an alien in possession of the same firearms (§ 922(g)(5)).  Doc. 29 at 2.  In response, the Government points out that defendant has cited no authority for his argument, but then again, the Government cites no authority for its position either. At any rate, although the two § 922(g) provisions at issue here clearly do not constitute a "single offense" for double jeopardy purposes under the test of *Blockburger v. United States*, 284 U.S. 299 (1932) -- because each requires proof of a fact that the other does not -- the Tenth Circuit in *United States v. Johnson*, 130 F.3d 1420, 1426 (10th Cir. 1997) concluded that in § 922(g) Congress intended only punish a defendant once for a single instance of possession of a single firearm, regardless of whether that person qualifies under more than one category of the "prohibited persons" listed in § 922(g).  *See also United States v. Rowe*, 47 Fed.Appx. 862, 2002 WL 1923822 (10th Cir. 2002); *United States v. Hooks*, 33 Fed.Appx. 371, 2002 WL 126999 (10th Cir. 1992).  In *Johnson*, the court found that the defendant's convictions for being a felon in possession of a firearm and being a controlled substance user in possession of the same firearm were multiplicitous, and it ordered the district court to vacate one of these convictions. Based on the rule of *Johnson*, the court concludes that multiple punishments for a single instance of possession of the same firearm cannot be imposed on the defendant under § 922(g).  There are three such instances of multiplicitous counts under the jury's verdict: *first*, Counts 3 and 8; *second*, Counts 4 and 9; and *third*, Counts 5 and 10.  Although these multiplicitous counts do not warrant granting a new trial, the court will comply with *Johnson* at the time of sentencing by not imposing multiple punishments as to any

14

of these three pairs of counts.[6]

Defendant's final argument for new trial is that "[t]he evidence presented regarding the search of a government data base regarding the defendant's immigration status and the results of said search were introduced in violation of [defendant's] right to confront his accusers" and constituted impermissible hearsay.  Doc. 29 at 2.  As an initial matter, defendant has not specified what out of court statements were used by the Government to prove the truth of the matter asserted therein.  *See* Fed.R.Evid. 801(c) (definition of hearsay).  Moreover, as the Government points out, Rule 803(10) provides that the absence of a public record or the nonoccurrence of a matter of for which a record is regularly made may be established by testimony that a diligent search failed to disclose such matters, and such testimony is not excluded by the hearsay rule.  *See also* Fed.R.Evid. 803(8) (public records exception);  *United States v. Valdez-Maltos*, 443 F.3d 910, 911 (5th Cir. 2006); *United States v. Lopez-Moreno*, 420 F.3d 420, 437 (5th Cir. 2005).  Nor was the database evidence to which defendant objected in this instance testimonial in nature. *See Lopez-Moreno*, 420 F.3d at 437; *Davis v. Washington*, 126 S.Ct. 2266, 2273 (2006) ("It is the testimonial character of the statement that separates it from other hearsay that, while subject to traditional limitations upon hearsay evidence, is not subject to the Confrontation Clause.").

---

[6] In a case such as this it seems entirely appropriate for the Government to charge the counts separately, since offense each contains elements that the others do not.  As far as the appropriate remedy is concerned, *Johnson* directed the district court to vacate one of the multiplicitous counts.  But such a remedy seems premature and unnecessary in this instance, given that all of defendant's convictions are still subject to potential attack on both direct and collateral review.  For example, if this court were to vacate the counts that are based on defendant's status as an unlawful user of a controlled substance, and he subsequently prevailed on a challenge to the other counts relating to alien status, there might be a question of whether the court had authority at that point to "reinstate" a conviction on the former counts.  At this stage, the avoidance of multiple punishments on these counts is sufficient to vindicate Congressional intent relating to § 922(g).

Finally, the defendant was afforded the opportunity to cross-examine an ICE Agent concerning the parameters of the records search.  *Cf. United States v. Rueda-Rivera*, 396 F.3d 678 (5th Cir. 2005) (admission of certificate of non-existence of record did not violate defendant's right to confront witnesses against him).  In sum, defendant has shown no grounds for a new trial in this case.

IV.  *Conclusion*.

Defendant's Motion for Judgment of Acquittal (Doc. 27) is GRANTED IN PART and DENIED IN PART. The motion is granted with respect to Count 7 of the Superseding Indictment; it is denied as to all remaining counts upon which defendant was found guilty.

Defendant's Motion for New Trial (Doc. 28) is DENIED.

IT IS SO ORDERED this  29th  day of June, 2006, at Wichita, Ks.

<div style="margin-left:40%">

s/Wesley E. Brown
Wesley E. Brown
U.S. Senior District Judge

</div>